NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KINDRED HOSPITALS EAST, LLC, | CIVIL ACTION NO. 17-8467 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| HORIZON HEALTHCARE SERVICES, INC., | |
| Defendant. | |

**LINARES**, Chief District Judge

This is a breach of contract action wherein a medical provider alleges that it has been wrongfully denied reimbursement for rendering medical services by the defendant, Horizon Healthcare Services, Inc. (hereinafter, "Horizon"). (ECF No. 1.) In this instance, Horizon is acting as an administrator of a health plan for employees of the State of New Jersey (hereinafter, "the State Plan"). (ECF No. 40 at 13 (stating that Horizon is "a State-contracted claims administrator" of the State Plan).)

Currently pending before the Court is Horizon's motion pursuant to Federal Rule of Civil Procedure (hereinafter, "Rule") 12(h)(3) to dismiss the remaining claims that are asserted against it (hereinafter, "the Remaining Claims") in this action. (ECF No. 28 through ECF No. 28-11; ECF No. 30 through ECF No. 30-7; ECF No. 40 through ECF

No. 40-3.) The medical-provider plaintiff, Kindred Hospitals East, LLC (hereinafter, "the Hospital"), opposes the motion. (ECF No. 36 through ECF No. 36-3.)[1]

The Court resolves the motion upon a review of the papers and without oral argument. *See* L. Civ. R. 78.1(b). For the following reasons, the Court grants the motion and dismisses the Remaining Claims.

## I. BACKGROUND

The Court is concerned about setting forth the facts underlying this dispute in a vacuum and in the absence of the proper context. Therefore, a description of the manner in which the State Plan functions will be presented first.

### A. The State Plan

The State of New Jersey offers and finances health benefits to its employees and their family members through the State Plan. *See* N.J.S.A. 52:14-17.25 *et seq.* The State of New Jersey has entered into a contract with Horizon to act as an administrator of the State Plan on its behalf. (ECF No. 30 at 2.)[2]

---

[1] The Hospital's claims in this case concerning reimbursement for a different patient were previously dismissed by stipulation on August 3, 2018. (*See* ECF No. 26.)

[2] This arrangement between the State of New Jersey and Horizon is not new. *See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-462, 2009 WL 749795, at *1 (D.N.J. Mar. 19, 2009) (in granting a motion to dismiss a case that had been brought in 2006, the District Court noted that Horizon "administers health benefit plans sponsored by the State of New Jersey, and carries out all functions and obligations normally performed by an insurer, including, but not limited to, investigating and servicing claims and processing appeals").

The New Jersey Legislature makes annual appropriations for the necessary funds to finance the State Plan. *See* N.J.S.A. 52:14-17.33. Those funds are then remitted to the State Treasury in order to pay claims for medical services that are rendered, and the State is obligated to pay claims only within the limits of those available appropriations. *See id.* Any funds used to pay out claims under the State Plan come from the coffers of the Treasury of the State of New Jersey. *See* N.J.S.A. 52:14-17.30; *see also* N.J.S.A. 52:14-17.46a.

The State Plan is completely exempt from the requirements of the Employee Retirement Income Security Act of 1974, because it is a "governmental plan" that is maintained "by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). As a result, an entity known as the State Health Benefits Commission (hereinafter, "the Commission") was created pursuant to the New Jersey State Health Benefits Program Act to oversee the State Plan. (ECF No. 30 at 2 (uncontested assertion of the same by Horizon).) The Commission has the authority to develop — and the Commission has indeed developed — the rules and regulations regarding the administration of the State Plan. *See* N.J.S.A. 52:14-17.27 through 17.28; *see also* N.J.A.C. 17:9-1.1 *et seq.* (the aforementioned regulations drafted by the Commission).

Under the terms of the State Plan, Horizon will send out a written notice of a determination concerning a claim for medical benefits. In addition, under the terms of

the State Plan, a process must be followed if a benefits determination is viewed as being adverse. Pursuant to the terms of that process, requests to appeal from an adverse benefits determination must be made in writing. *See* N.J.A.C. 17:9-1.3(a).

There are two levels of appeals that a party must complete before bringing a lawsuit against the State Plan or Horizon. *See* N.J.A.C. 17:9-1.3. As to the first level of appellate remedies (hereinafter, "the First Appellate Level"), relief must be sought directly from Horizon itself. (ECF No. 28-1 at 10.) If the adverse benefit determination is not resolved after the First Appellate Level has been exhausted, then relief must be sought directly from the Commission (hereinafter, "the Second Appellate Level"). *See* N.J.A.C. 17:9-1.3(a). Upon exhaustion of the Second Appellate Level, a lawsuit against the State Plan may then be instituted in the New Jersey Appellate Division. *See* N.J.A.C. 17:9-1.3(d).

**B.     Facts**

The Hospital was providing long-term medical treatment to a patient (hereinafter, "the Patient") insured by the State Plan. (ECF No. 1.) At one point during the course of the Patient's treatment at the Hospital, Horizon determined that it was no longer medically necessary for the Patient to receive the higher level of care that he was receiving at the Hospital, and that the Patient should be transferred to a different facility that provided a lower level of care. (ECF No. 28-1 at 5; *see also* ECF No. 30 at 3–4.) Despite this determination by Horizon, the Hospital opted to let the Patient remain

admitted in the Hospital. (ECF No. 1 at 7.) As a result, the Patient remained under the care of the Hospital at the higher level of care from the time that Horizon determined that he could be transferred until the date of his discharge from the Hospital (hereinafter, "the Contested Time Period"). (*Id.*)

The Hospital then sought full reimbursement for all of the treatment that it provided to the Patient, including the treatment provided during the Contested Time Period. (ECF No. 1 at 6–7.) However, Horizon reimbursed the Hospital for only the medical services rendered to the Patient before the Contested Time Period. (*Id.*) The Court notes that the Hospital did receive some reimbursement for the services that it rendered to the Patient during the Contested Time Period from Medicare. (*Id.* at 7.)

The Hospital objected to this benefits determination by Horizon. The Hospital went through and exhausted the steps required for the First Appellate Level. (ECF No. 30 at 4; *see also* ECF No. 30-6 at 3 (the appeal letter filed by the Hospital with Horizon, which the Hospital entitled as "First Provider Appeal").) Horizon's request for relief under the First Appellate Level was denied by letter dated May 16, 2016, wherein Horizon: (1) advised both the Hospital and the Patient that there was a right to a further appeal, and (2) included information on how to proceed for such an appeal. (ECF No. 30 at 4; *see also* ECF No. 30-7 at 2–3 (the denial letter issued by Horizon).) However, the Hospital brought this action for breach of contract in Federal Court in October 2017 without having commenced or exhausted the Second Appellate Level. (ECF No. 1 at 6–7, 16–20.)

## II. DISCUSSION

### A. Standards

The Court is guided by the following standards in resolving the pending motion to dismiss.

#### 1. Rule 12(h)(3)

Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Whereas a motion made pursuant to Rule 12(h)(3) may be asserted at any time during the course of litigation, the more-familiar motion made pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction is usually made during the initial stages of litigation in a case. *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (stating the same). However, motions that are made pursuant to either Rule 12(h)(3) or Rule 12(b)(1) "are analytically identical." *Id.*; *see also Dong v. Ren's Garden*, No. 09-5642, 2010 WL 1133482, at *1 n.2 (D.N.J. Mar. 22, 2010) (holding that even though the moving defendant referred to the motion to dismiss as being made under Rule 12(h)(3), the analysis would be made pursuant to Rule 12(b)(1)).

#### 2. Rule 12(b)(1)

It is not necessary for the Court to restate the standard for resolving a motion to dismiss that is made pursuant to Rule 12(b)(1), because that standard has been already

enunciated. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (setting forth the standard; citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977), *Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006), and *Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014)).

**B.     The Motion Is Granted**

The Court is compelled to conclude that the Remaining Claims are barred, and thus Horizon's motion to dismiss is granted. As the Third Circuit Court of Appeals has held previously and unequivocally in a dispute concerning a claim for reimbursement under the State Plan, the State Plan "unambiguously requires" that those disagreeing with the determinations concerning reimbursements for medical care must exhaust administrative remedies pursuant to New Jersey Administrative Code 17:9-1.3(a) before proceeding to litigation. *Roche v. Aetna, Inc.*, 681 F. App'x 117, 119 (3d Cir. 2017); *see also id.* at 122 (holding that a plaintiff challenging an adverse benefit determination under the State Plan must "exhaust her administrative remedies as was required by the State Plan's terms" before resorting "to court"); *see also id.* at 123 (holding that a "claim under the State Plan must . . . be administratively exhausted" before an action is brought in court). In so holding, the Third Circuit Court of Appeals specifically noted that the relevant regulations contemplate that the appeals will be exhausted, including the Second Appellate Level, prior to a filing in court. *See id.* at 121.

In an effort to salvage its claim, the Hospital argues that the mandatory language of the relevant regulations concerning the exhaustion of the appeals process applies only to "members" of the State Plan, *i.e.*, those who are insured by the State Plan, and not to medical providers seeking reimbursement from the State Plan or its administrator for medical services provided to those members. (ECF No. 36 at 6 (arguing that "the New Jersey regulation ostensibly requiring members to administratively exhaust claims for coverage and benefits is wholly inapplicable").) However, this argument is without merit.

First, the handbook distributed by the State Plan clearly states that "[t]he member, *physician*, or authorized representative" is bound by the requirement to exhaust both the First Appellate Level and the Second Appellate Level when there is a disagreement with a benefits determination. (*See* ECF No. 30-1 at 65 (emphasis added).) Second, the Third Circuit Court of Appeals has held that the exhaustion requirements under the State Plan are intended for both the insureds and for "medical professionals." *Roche*, 681 F. App'x at 124; *see also Gregory Surgical Servs., LLC*, 2009 WL 749795, at *4 (granting Horizon's motion to dismiss a claim brought by a medical-provider plaintiff objecting to the amount of reimbursement from Horizon for the treatment of an insured covered by the State Plan, and holding that the provider "asserts the rights of beneficiaries under the [State Plan], which . . . indicate that Plaintiff's recourse to appeal claim decisions by [Horizon] is to file an appeal with the [Commission]"). Third, the plain language of the

exhaustion requirement reveals that exhaustion of the complete appeals process by the Hospital is "mandatory," and that "[a]ny other reading would be contrary to the public policy behind the exhaustion requirement." *Casatelli v. Horizon Blue Cross Blue Shield of N.J.*, No. 09-6101, 2010 WL 3724526, at *6 (D.N.J. Sept. 13, 2010) (granting Horizon's motion to dismiss a claim by a medical-provider plaintiff who objected to Horizon's alleged failure to reimburse for medical services that he rendered to an insured under the State Plan).

The Court notes that the aforementioned holdings that were issued by the Third Circuit Court of Appeals and by the District Courts in the District of New Jersey concerning the applicability of the exhaustion requirements to medical providers are consistent with the case law of the New Jersey State Courts. *See, e.g., Advanced Rehab of Jersey City v. Horizon Healthcare of N.J., Inc.*, No. A-3303-09T3, 2011 WL 3629176, at *3 (N.J. App. Div. Aug. 19, 2011) (reversing a decision by a State trial court that addressed a medical-provider plaintiff's claim before the administrative remedies had been exhausted, and holding that "[w]e have consistently recognized the statutory and regulatory scheme that requires disputes regarding eligibility and the payment of benefits under the [State] Plan to be submitted first to the [Commission], and, only thereafter, to this court for resolution").

## III. CONCLUSION

For the aforementioned reasons, this Court: (1) grants Horizon's motion to dismiss the Remaining Claims; (2) dismisses the Remaining Claims; and (3) closes the case. An appropriate order accompanies this Opinion.[3]

Date: February /   , 2019

JOSE L. LINARES
Chief Judge, United States District Court

---

[3] In view of the Court's holding that the Hospital has not exhausted administrative remedies, the Court will not address Horizon's alternative arguments for dismissal. *See Gregory Surgical Services, LLC*, 2009 WL 749795, at *4 n.1 (holding the same is granting a motion to dismiss the medical-provider plaintiff's claim against Horizon for failure to exhaust administrative remedies).